UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| DONNA RITTENHOUSE, </br></br>    Plaintiff, </br></br>  vs. </br></br>EARLY WARNING SERVICES, L.L.C., </br></br>    Defendant. | 2:13-cv-00769 JWS </br></br>ORDER AND OPINION </br></br>[Re: Motion at Docket 32] |

### I.  MOTION PRESENTED

At docket 32, defendant Early Warning Services, L.L.C. ("Early Warning") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on plaintiff Donna Rittenhouse's two claims. Rittenhouse's opposition to Early Warning's motion is at docket 36. Early Warning filed a reply at docket 38. Oral argument was not requested and would not assist the court.

### II.  BACKGROUND

Rittenhouse worked for Early Warning as a production control analyst ("PCA") from 2008 to 2012. Rittenhouse's initial supervisor was Nancy Bustamante, who

reported to Darla Nutting. Lorena Gayton was Rittenhouse's "team leader" and "first point of contact."[1]

In the beginning of 2012 Gayton became Rittenhouse's supervisor. Rittenhouse claims that Gayton had an "age-based animus." Rittenhouse alleges that Gayton judged her mistakes more harshly than those of her younger colleagues. After Gayton documented a series of Rittenhouse's mistakes and presented them to Early Warning's management, Early Warning discharged Rittenhouse in September 2012. Rittenhouse claims she was discharged because of her age.

Her complaint asserts two causes of action: first, that Early Warning's discharge violated the Age Discrimination in Employment Act ("ADEA"); and second, a request for declaratory relief regarding this alleged ADEA violation.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4] However, summary judgment is mandated under Rule 56© "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]

---

[1] Doc. 33-1 at 18 ¶¶ 23–25.

[2] Fed. R. Civ. P. 56(a).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Id.*

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[6] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[7] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[8] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[9] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[10]

### IV.  DISCUSSION

The ADEA prohibits employers from discharging workers aged 40 or older because of their age.[11] Rittenhouse's discriminatory discharge claim alleges disparate treatment under the ADEA.[12] For her claim to survive summary judgment, she must first establish a prima facie case of age discrimination. If she can do so, the burden of production shifts to Early Warning to articulate a legitimate non-discriminatory reason for discharging her. It would then be Rittenhouse's responsibility to demonstrate that

---

[6]*Id.* at 323.

[7]*Id.* at 323-25.

[8]*Anderson,* 477 U.S. at 248-49.

[9]*Id.* at 255.

[10]*Id.* at 248-49.

[11]29 U.S.C. §§ 623(a)(1); 631(a).

[12]*Pottenger v. Potlatch Corp.*, 329 F.3d 740, 745 (9th Cir. 2003).

there is a material genuine issue of fact as to whether Early Warning's purported reason is pretext for age discrimination.[13]

**A. Prima Facie Case**

For Rittenhouse to establish a prima facie case of discriminatory discharge under the ADEA, she must show that she was (1) discharged; (2) 40 years of age or older; (3) performing her job satisfactorily; and (4) replaced by "a substantially younger employee with equal or inferior qualifications."[14] The parties do not dispute the first two elements. The only questions, then, are whether Rittenhouse can show that she was performing her job satisfactorily and that she was replaced by a substantially younger employee with equal or inferior qualifications.

On summary judgment, the evidence necessary to establish a prima facie ADEA claim is "minimal."[15] It "may be either direct or circumstantial, and very little is required."[16] It "does not even need to rise to the level of a preponderance of the evidence."[17] "The plaintiff need only offer evidence which 'gives rise to an inference of unlawful discrimination.'"[18]

**1. Rittenhouse's Job Performance**

Rittenhouse sets forth the following evidence in support of her argument that she performed her job duties satisfactorily:

---

[13] *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012) (holding that the *McDonnell Douglas* framework continues to apply to summary judgment motions in ADEA cases).

[14] *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).

[15] *Id*. (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

[16] *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996) (citations omitted).

[17] *Wallis*, 26 F.3d at 889 (citations omitted).

[18] *Id*. (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985) *amended*, 784 F.2d 1407 (9th Cir. 1986)).

- Rittenhouse received a merit-based pay raise every year, which means that Early Warning gave her at least a "satisfactory" rating in her year-end performance reviews;[19]
- Early Warning asked Rittenhouse to train two employees after she was discharged;[20]
- Senior PCA Duane Syx testified at his deposition that Rittenhouse was the employee best suited to assume his workload in 2012 while he was on medical leave because she was "the most senior person;"[21] and
- Rittenhouse testified at her deposition that Gayton was "very impressed" that Rittenhouse did not need Gayton's assistance while she was covering Syx's workload when he was on leave.[22]

Early Warning contends that Rittenhouse's job performance was unsatisfactory, and supports that contention with evidence that includes:

- an October 18, 2010 email conversation between Bustamante and Nutting where Bustamante states that she has a list of issues to discuss with Rittenhouse and describes Rittenhouse's performance as continuing to be "erratic." Nutting responds by stating, "I hope she is able to give you a good reason for what is happening or we will have to make a tough decision;"[23]
- Bustamante's evaluation of Rittenhouse's performance in 2010, which states that "In the last quarter, [Rittenhouse] struggled with accuracy. She

---

[19] Doc. 37-2 at 25 ¶¶ 23–25; Doc. 33-2 at 10 ¶ 1.

[20] Doc. 33-2 at 16 ¶¶ 15-19; *id.* at 18 ¶¶ 1–8; *id.* at 31 ¶¶ 15–25; *id.* at 32 ¶¶ 1–22.

[21] Doc. 37-4 at 36.

[22] Doc. 33-1 at 56 ¶¶ 9–13.

[23] Doc. 33-1 at 185.

-5-

acknowledged the issues and has been committed to improving her accuracy. Recently she has greatly improved;"[24]

- Bustamante's evaluation of Rittenhouse's performance in 2011, which states that "For the most part, [Rittenhouse's] issues with accuracy on her daily work that were documented in last year's review were resolved by first quarter. However, there have been a few special tasks late in the year that were assigned to [Rittenhouse] that have had to [be] corrected. . . . These lapses in attention are not the norm for [Rittenhouse] this year." Bustamante also writes that Rittenhouse made progress toward her goal of becoming "more independent in her [on-call] support for bICS this year" but she still relies on Gayton for "issue resolution." With regard to "performance issues with rtICS," Bustamante writes that Rittenhouse "knows what to look for but not always how to come up with the quickest assessment of the situation;"[25]

- Nutting's deposition testimony that Rittenhouse was struggling with her job performance and making "a number" of mistakes. Nutting also testified that Rittenhouse "relied heavily" on Gayton, and her performance suffered when Gayton took over as Rittenhouse's supervisor in 2012 and could not help Rittenhouse as often. Nutting testified that Rittenhouse's performance problems began occurring "more and more" such that it was "very difficult to rely on her."  Around May of 2012, Early Warning put Rittenhouse on formal counseling because, according to Nutting, Rittenhouse's mistakes had persisted too long, and Early Warning was finally telling Rittenhouse that "we're not getting anywhere;"[26]

---

[24] Doc. 33-1 at 197.

[25] Doc. 33-1 at 213–16.

[26] Doc. 33-2 at 10–14, 21–22.

- a July 3, 2012 memorandum from Gayton to Rittenhouse where Gayton states that Rittenhouse had recently been having "difficulty with effectively and efficiently managing [her] work load." [sic] And as a result, Rittenhouse had "missed tasks" that caused "impacts to clients, and unnecessary work for [their] department as well as other departments within the company." Gayton also noted that Rittenhouse was periodically unable to resolve "standard research tasks" independently, which is what Gayton expected from someone of Rittenhouse's "level and length of experience." The memorandum concludes with Gayton stating that she would meet with Rittenhouse weekly to discuss her performance;[27]
- an August 3 email from Gayton to Rittenhouse that details four mistakes that Rittenhouse made between July 27 and August 3;[28]
- an August 31 email from Gayton to Rittenhouse that details numerous mistakes that Rittenhouse made during the previous week;[29]
- a September 10 email from Gayton to Rittenhouse that details numerous mistakes that Rittenhouse made during the previous week and concludes by stating that Nutting told Rittenhouse that she was not "seeing a lot of positive change;"[30] and
- a September 20 email from Gayton to Rittenhouse that details numerous mistakes that Rittenhouse made during the previous week and concludes

---

[27]Doc. 33-1 at 217.

[28]Doc. 33-1 at 218.

[29]Doc. 33-1 at 226.

[30]Doc. 33-1 at 227–28.

that Gayton was seeing "the same inconsistences [sic] as when we originally started."[31] Rittenhouse was discharged the next day. Although Rittenhouse admits that her job performance was not perfect, she agues that Early Warning nevertheless viewed her as a satisfactory employee until Gayton became her supervisor. Rittenhouse's evidence—particularly the annual pay raises she received for satisfactory job performance before Gayton became her supervisor—tends to support this argument. Given the low evidentiary threshold at this stage in the litigation, Rittenhouse has satisfied the third prima facie requirement.[32]

**2. Rittenhouse's Replacement**

Early Warning appears to concede that the individual who replaced Rittenhouse is substantially younger than her, but argues that Rittenhouse has no evidence that her replacement was equally or less qualified than her for her position.[33] Early Warning is incorrect. Rittenhouse testified at her deposition that Syx told her that the person Early Warning hired to replace her had no relevant experience.[34] Early Warning objects to this testimony because Rittenhouse has no personal knowledge of her replacement's

---

[31]Doc. 33-1 at 233–34.

[32]Rittenhouse also asserts that the evidence shows that a significantly younger employee kept his job even though his job performance was worse than Rittenhouse's. Doc. 36 at 6 ¶¶ 6–9. The evidence does not support this assertion. *See* Gayton Deposition Testimony, Doc. 37-3 at 39 ¶¶ 12–14 ("Q. Why was [Jeff] not written up when Donna was? A. He didn't have as many issues as we were having with Donna."); Nutting Deposition Testimony, Doc. 37-2 at 55–56 ("Q. Why was it that Donna's performance merited termination where other PCAs who may have made mistakes such as Jeff, they were allowed to continue working[?] A. It was the type of errors, the frequency of the errors, and the expectations based on the time she had been in the role. We were not seeing progress with Donna; if anything, things were getting worse. . . . Jeff was making progress. Donna was not.").

[33]Doc. 38 at 7.

[34]Doc. 37-1 at 218 ¶¶ 19–21.

background, but Syx testified directly that Rittenhouse's replacement was less qualified than Rittenhouse.[35] Rittenhouse has satisfied the fourth prima facie requirement.

**B. Rebuttal**

Rittenhouse's prima facie case establishes a rebuttable presumption that Early Warning has violated the ADEA. The burden now shifts to Early Warning to articulate legitimate, non-discriminatory reasons for discharging Rittenhouse.[36] Early Warning states that it discharged Rittenhouse because of her "inordinate number of mistakes after more than three years in the position."[37] Poor job performance is a legitimate, non-discriminatory reason for discharging Rittenhouse.[38] Early Warning has successfully rebutted Rittenhouse's prima facie case.

**C. Pretext**

Because Early Warning met its burden of proffering a legitimate reason for discharging Rittenhouse, the presumption of unlawful discrimination "drops of out the picture."[39] The burden now shifts back to Rittenhouse to put forth specific and substantial evidence that Early Warning's reason is really a pretext for age discrimination.[40] Rittenhouse can prove pretext either indirectly, by showing that Early

---

[35]Doc. 37-4 at 36 (testifying that Rittenhouse had "much more experience" than her replacement, was able to complete tasks independently that the replacement "would not be able to complete on his own, and "of course" would have been more valuable of an employee given her experience).

[36]*Coleman,* 232 F.3d at 1282.

[37]Doc. 32 at 8 ¶¶ 15–19.

[38]*See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661 (9th Cir. 2002).

[39]*Wallis*, 26 F.3d at 889 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

[40]*Aragon*, 292 F.3d at 661.

Warning's reason is inconsistent or otherwise not believable, or directly, by showing that unlawful discrimination was the actual cause of Early Warning's decision.[41]

Rittenhouse presents indirect evidence that Early Warning's poor assessment of Rittenhouse's job performance was pretextual. This evidence falls under two categories: (1) evidence that tends to show that Gayton possessed an age-based animus and (2) evidence that tends to show that Gayton overstated Rittenhouse's job performance problems.

Rittenhouse's evidence that tends to show that Gayton possessed an age-based animus includes:[42]

- former Early Warning employee Rose Hernandez's testimony that Gayton made derogatory, age-based comments about various Early Warning employees, including, "she's too old, she probably should just quit," "maybe you shouldn't be working anymore," and "when is she going to retire?";[43] and

- Rittenhouse's testimony that Gayton regularly made similar derogatory comments, including "I don't want to be [her] age working in that kind of position. She's too old. She forgets things. She gets things messed up, mixed up,"[44] "she's too old for that position. I don't know why she doesn't quit,"[45] and "she really was too old and she should have retired a few years ago."[46] Rittenhouse testified that whenever Early Warning would

---

[41]*Shelley*, 666 F.3d at 609.

[42]*See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

[43]Doc. 37-5 at 16, 29, 30, 35.

[44]Doc. 37-1 at 190–91.

[45]Doc. 37-1 at 186–87.

[46]Doc. 37-1 at 193.

hire someone new Gayton would state, "I hope they're not hiring an old lady again."[47] She also testified that Gayton told her that people over 50 years old should have their driver's licenses taken away.[48]

Rittenhouse's evidence that tends to show that Gayton may have overstated the significance of Rittenhouse's errors includes Syx's testimony that Gayton judged older employees by a higher standard than younger employees in similar situations.[49] Syx, who was born in 1960,[50] testified that

> because of my age . . . I was also judged by a different standard.
> . . . .
> I've seen younger employees under Ms. Gayton being treated when they would make a mistake or not complete a project correctly, be treated differently than myself under the same similar situation.
> . . . .
> [W]hen either a mistake was made, or when a project was completed according to how [Gayton] felt it should be completed, [the] younger employees were . . . given more of a pass on that mistake or that project not meeting expectations.[51]

Syx testified that he observed a younger employee accidentally delete an entire table from a database, which Syx considered to be "a major mistake" that was more severe than any mistake he knew Rittenhouse to have made, and Gayton's response was essentially, "well, it's not that big of a deal."[52] Syx also testified that on several occasions Gayton publically criticized his mistakes whereas she did not do the same to younger employees.[53] Further, Hernandez testified that at least one of Rittenhouse's

---

[47]Doc. 37-1 at 193.

[48]Doc. 37-1 at 194–95.

[49]Doc. 37-4 at 6, 8, 32.

[50]Doc. 37-4 at 12.

[51]Doc. 37-4 at 6–7.

[52]Doc. 37-4 at 32.

[53]Doc. 37-4 at 33.

mistakes that Gayton noted in her weekly reviews was a common mistake made by everyone in the department.[54]

Early Warning relies primarily on *Nidds v. Schindler Elevator Corp.*,[55] and *Nesbit v. Pepsico, Inc.*,[56] to argue that Gayton's "stray" derogatory remarks are insufficient as a matter of law to establish discrimination because they neither relate to Rittenhouse specifically nor the specific decision to discharge her.[57] In *Nidds*, the plaintiff's supervisor allegedly stated that "he intended to get rid of all the 'old timers' because they would not 'kiss my ass'" and then laid off the plaintiff, who was over 40 years old.[58] The Ninth Circuit held that the supervisor's "old timers" comment was "weak evidence" because it was ambiguous—it could possibly refer to longtime employees or to insubordinate employees instead of employees over 40—and because it was not tied directly to the plaintiff's layoff.[59] In *Nesbit*, the plaintiff's supervisor commented to the plaintiff during a meeting that, "[w]e don't necessarily like grey hair."[60] The Ninth Circuit held that this was "at best weak circumstantial evidence of discriminatory animus" because it "was uttered in an ambivalent manner and was not tied directly to Nesbit's termination."[61]

Unlike the comments in *Nidds* and *Nesbit*, Gayton's alleged comments were neither isolated nor ambiguous. Rittenhouse testified that Gayton made derogatory

---

[54] Doc. 37-5 at 5.

[55] 113 F.3d 912 (9th Cir. 1996).

[56] 994 F.2d 703 (9th Cir.1993).

[57] Doc. 38 at 8.

[58] *Nidds*, 113 F.3d at 915.

[59] *Id*. at 919.

[60] *Nesbit*, 994 F.2d at 705.

[61] *Id*.

comments about a variety of individuals aged 40 or over on a consistent basis.[62] If the jury finds Rittenhouse's testimony credible, Gayton's pervasive derogatory comments would be unambiguous evidence of her age-based animus. This evidence, along with Rittenhouse's evidence that shows that Gayton judged the mistakes of Early Warning's older employees more harshly than those of their younger counterparts, could lead a jury to reasonably infer that Gayton's judgment of Rittenhouse's job performance as unsatisfactory was caused by age-based discrimination.

Although Nutting was also involved in the decision to discharge Rittenhouse, the evidence shows that no one had more influence over that decision than Gayton. It was Gayton who directly supervised Rittenhouse and Gayton who reported Rittenhouse's mistakes to Nutting. Nutting testified that Rittenhouse's performance would not have been "obvious" to her because she "didn't interact all that closely with the PCAs on their day-to-day work."[63] Instead, Nutting relied on Gayton to inform her opinion of Rittenhouse's performance.[64] Given the annual merit-based pay raises that Early Warning gave Rittenhouse, Nutting was apparently satisfied with Rittenhouse's performance until Gayton became her supervisor.

The jury may reasonably find that Rittenhouse's job performance significantly worsened in 2012 or that she was discharged for some other reason unrelated to her age. But the evidence, when taken together and viewed in the light most favorable to Rittenhouse, is sufficient to allow a reasonable jury to find that Early Warning's unsatisfactory assessment of her job performance was pretextual and that it discharged

---

[62]*See* Doc. 37-1 at 186–88 (testifying that Gayton made age-based derogatory comments about Diane Weland at least once a month); *id*. at 190–91 (testifying that Gayton made age-based derogatory comments about Darla Nutting approximately once every other month); *id*. at 193 (testifying that Gayton made fifteen age-based derogatory comments about Nancy Bustamante); *id*. at 195 (testifying that Gayton made between five and ten age-based derogatory comments about elderly motorists).

[63]Doc. 37-2 at 26.

[64]Doc. 37-2 at 30–32.

Rittenhouse because of aged-based discrimination.[65] Because the evidence permits the reasonable inference that Rittenhouse was terminated because of her age, summary judgment is inappropriate.

### V. CONCLUSION

Based on the preceding discussion Early Warning's motion for summary judgment at Docket 32 is DENIED.

DATED this 29th day of July 2014.

/s/
JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[65]*See Reeves*, 530 U.S. at 152–53; *id.* at 141 ("[T]he question facing triers of fact in discrimination cases is both sensitive and difficult, and . . . there will seldom be eyewitness' testimony as to the employer's mental processes.") (internal quotation omitted).